First case on our call this morning, agenda number 17, case number 108-923, is Millennium Park Joint Venture LLC, Appalee v. James M. Houlihan, Cook County Assessor, et al. at Santa Rae Appalachians. Counsel, you may proceed. Thank you. Good morning, Your Honors. I'm Randy Cameron, Assistant State's Attorney in Cook County. On behalf of Anita Alvarez, as the State's Attorney of Cook County, representing the County Assessor, James Houlihan, and the County Treasurer, Maria Pampas. It is the, there's two issues in this case. If it may please the Court, I'd like to take the jurisdiction issue first. It is the position of the county defendants that the Circuit Court did not have the authority, did not have the jurisdiction to enter any order in this case that was contrary or outside of the authority granted to the Circuit Court by the Property Tax Court Code. We've cited various cases indicating that real estate taxation is an area of special statutory jurisdiction. The Circuit Court does not have original jurisdiction in real estate tax cases. Why is this? Because the Constitution gives the General Assembly and the General Assembly only the power to raise revenue. And the General Assembly exercises this power by law, by passing statutes. Let me get directly to the issue here, which is the joint venture has asserted that its claim is unauthorized by law. Well, what is meant by unauthorized by law? There are two possibilities. One, the tax itself is invalid. It doesn't exist. It hasn't been authorized. There's a lot of possibilities. Nobody in this case has suggested that a real estate tax is not authorized. It's really not an issue. It's the second possibility that would put this issue, this case, within the unauthorized by law exception or not within the unauthorized by law exception. And that is, did the legislature give a public official discretion in making the assessment? Where do I get that? I get that from a case decided by this Court. It was Santiago v. Cusper, a case from 1990, where this Court said that a tax is authorized. And to challenge it, you have to use the legal remedy when the legislature has given a public official discretion in its assessment. Well, with that in mind, where does the assessor get the authority to assess? From common law? There is no common law assessment authority. The ability to tax is given to the General Assembly, which must then delegate various duties and authority to different entities. This ability to assess is provided by statute and only by statute. I'd like to say that the Department of Revenue of the State of Illinois, which is not the assessor, has the authority to assess certain things. Pollution control facilities, railroads, and something called low-sulfur dioxide emission coal-fueled devices, whatever that might be. And local assessment officials, now we're talking about the Cook County assessor, local assessment officers shall assess all other property not exempt from taxation. What is the joint venture's interest in this property? It's all other property. So the assessor has been given the authority to assess a license or a? To assess all other property. Does it make a difference whether it's talking about a license or a lease? It doesn't make a difference because the assessor has several things he has to do, Your Honor, and that is he has to make three determinations. First, is it real estate? That's actually the issue here. Second, what's the value of the property? Third, in Cook County, since the Cook County classifies property, what's the level of assessment? Is this industrial property? Is this commercial property? Is it residential? The assessor has been given the direct authority to go out and assess and make decisions. Those decisions are reviewable. There's a fairly complete statutory scheme for reviewing possible errors, and there are myriad possible errors. But the essence of this is the assessor has been given the discretion to make that first determination, which then gets reviewed by the review processes of the property tax code. The case cited by the joint venture is Knox County. It's the Knox County XREL Masterson, I believe it was, versus Highlands. That was a zoning case in which the county board was not given the authority to zone agricultural property. That would be akin to the assessor going out and assessing railroad property or pollution control facilities or whatever these low sulfur dioxide facilities are. In those areas, the assessor doesn't have discretion. But in all other areas Mr. Kemmer? Yes. In Knox County, though, isn't the case similar because there was a legal definition at issue and the definition was for agriculture and here it's a lease? Yes. The essence of that case is that the enabling legislation specifically excluded the agricultural property from the county's zoning scope or county's zoning power. As I suggest here, that would be akin to the assessor assessing railroads. Why? Because it has been excluded by the enabling statute. The assessor can't assess railroads. And with regard to the lease or versus license, is that not true also? No, it isn't because the assessor, unlike the county board in the Knox case, the assessor gets to make mistakes. Is this real estate? Somebody's got to make that first decision. But there is a complete review process for reviewing the assessor's decision. The Board of Review gets to take a look at it and the Board of Review has fairly extensive powers. They can confirm, revise, correct, alter, modify the assessment as it appears to be just. I'm suggesting that the difference between Knox County and this case is the enabling legislation. There is, in fact, along those lines, there is a statement made by the appellate court which succinctly, I think, differentiates this case from Knox County. The appellate court said it was the assessor's decision that the plaintiff's interest was the lease rather than the license which then gave it the authority to assess the real estate tax. You mean the assessor makes a decision and his decision then gives him the authority? No. His authority comes from statute, not from his decisions or the correctness of his decisions. One has to look to the assessor's authority as given to him by the General Assembly via statute, which is the only place the assessor can obtain his authority. To bolster this general approach that the assessor is allowed to make mistakes, you have to look merely to the property tax code section which allows judicial review. That's section 2315 which says, this section shall be construed to provide a complete remedy for any claims with respect to taxes, assessments, or levies. So what's this claim? It's a claim that the assessment is illegal, therefore, I don't have to pay taxes. That very same section says the court shall grant relief in cases in which the objector shows an assessment to be, what, incorrect or illegal. What's this case? The joint venture says the assessment is illegal because you can't tax a license. The statute has anticipated potential errors in that very first decision that the assessor makes. Is this real estate? In short, the unauthorized by law exception, I'll call it an exception, is inappropriate. Let me go on to the second issue which is, is this a lease or is this a license? I might note that this agreement contains the three essential requirements of a lease. A particular rent, there is a fixed rent plus a percentage rent. Mr. Kemmerer, if we agree with you on the first issue, we never get to that, is that right?  Is that right? Yes, Your Honor. A particular term, this term was for 20 to 30 years. It could be increased. And a particular place. There is some issue as to place, but the agreement actually describes the place to be used. It has in it a diagram which shows where this restaurant is supposed to be in Park. The joint venture actually put in a couple million dollars in creating this restaurant and coincidentally located exactly where that diagram shows it to be. Are there boundaries for that property? The agreement contains several items. Possibilities? Several possibilities. So then there wouldn't be a particular place or boundary? There is a particular place. Certainly that restaurant is a particular place. It's there 365 days a year. It's fully controlled by the joint venture. There's also a store. There's also storage facilities. And there's also the ability to push food carts around the Park during the summertime. But you mentioned control. Do they actually have control? Doesn't the Park District have some control including the times and the dates of operation? They have extensive control. There's no doubt. Staff, staff, signage, all that. Isn't that some control? There's no doubt about it. And I'll get to that in just a second. This agreement also has some transferability possibilities. A license is a personal right. Personal rights can't be transferred by definition. Yet this agreement has the possibility of being assigned. It has the possibility of being inherited. So the agreement's structure, first of all, has all of the essential requirements of a lease. And second, has two features which can't be a license. Now the joint venture has appropriately cited a number of cases concerning the control that the Park District has retained over this property. And the case they cite is the Charlton case. It's, I believe, the Charlton versus the Champaign Park District. And there's a statement in there which is frequently noted. And that statement is this. In a lease, the lessee possesses an estate and controls the property against the lessor and all the world. Is that true? Commercial leases routinely restrict the businesses and activities of the lessee. Could I walk down the street and go up to a fellow leasing offices and say, I'm a lawyer. I'd like to lease this office. And then use it as an auto repair facility or a stables? No. Do I, as the lessee, control the property against the lessor and all the world? No. It just doesn't occur. Counsel, isn't this a matter of contract interpretation which would be a question of law? This is a question of law. It certainly is. Take a look at this agreement. It is an agreement that essentially provides restrictions that define the restaurant to be operated. Let's say instead of defining it by saying it's got to be a sit-down restaurant and all these other restrictions they did, let's say they defined it by saying you should operate a McDonald's here. Well, with that simple statement comes a myriad of restrictions. It's got to look like a McDonald's. It's got to have a McDonald's menu and prices and accounting systems and registers and uniforms and all of the things that were provided for in this agreement. There is really no difference between requiring a particular type of franchise and creating your own kind of restaurant. Mr. Kemmerer, I want to ask you a question where maybe there's a little bit of a merger between the two issues, and that goes back to really the jurisdictional issue. And that is that on the unauthorized by law doctrine in which there be an exception to exhaustive administrative remedies, right? Right. Under that doctrine. Was your position on that first issue that the reason that it's not unauthorized is because the assessor has the discretion to be wrong? Yes. Is that basically what you're saying? It is our position. And that's why I was asking about the merger of these, you know, two issues. So even if we disagree with you, if we agree that the appellate court was correct on their assessment of license versus lease, it doesn't defeat your jurisdictional argument because that would still be something that would come under the act? That's correct. In other words, the assessor's authority to make a mistake. You may have made a mistake here. It's a possibility. But does the court have jurisdiction to even hear this as a declaratory judgment action? No. The restrictions in this agreement are essentially the restrictions as to the kind of business going to be operated on this property. Since virtually every commercial agreement for the use of property is likely to contain a host of restrictions, I would suggest the focus here should not be on the control, since every agreement is going to have controls in it, and it's very difficult to just cut off where the control should be and how much control is a license, how much control is a lease. The emphasis should be on are the essential requirements of a lease present? They are here. What do these requirements, what do these essential requirements of a lease provide for the joint venture? They provide certainty. They know how long they're going to be there, where they're going to be, and what's it going to cost them. Any reasonable businessman has got to know that. Should we start with a presumption that it's a lease? I think the court should start with the presumption that the assessment is correct. After all, this joint venture is using public property, and unlike every other restaurant in Chicago, they don't want to pay taxes. Mr. Calvert? Yes. But didn't the Park District have access and other vendors have access to the property as well? They had some limited access, yes, and not unlike most restaurants. They didn't have exclusive control. I suspect if you walked into that restaurant, you'd find they had exclusive control. And didn't the Park District assign one of their own employees to? I don't believe so, but I'm not sure of that, Your Honor. Mr. Kemmer, can an exemption be issued based upon a license? No. This isn't exempt property. Okay, but let's back up. You mentioned in the very beginning the Department of Revenue assesses pollution control facilities, et cetera. Then it says local assessment officers, and I presume Mr. Houlihan is. He is. It says, shall assess all other property, all other property, not exempted. So isn't the presumption we start with is that an assessor has the authority to assess all property that's not otherwise exempt? Right, this isn't exempt property. So how do you get the exemption in the first place? Isn't that the initial threshold? Well, there's no claim this is exempt property. What's exempt is the underlying real estate owned by the Park District. What is being actually taxed here is the agreement. It's under, I think it's 9-195 of the property tax code. It says that property that is exempt, that is leased to somebody else for a non-exempt purpose, and this is a non-exempt purpose, should be treated as real estate and assessed. Are you? I'm sorry. Counsel, your time is up. Oh, I'm sorry. Thank you.  May it please the Court. I'm Steve Novak. I'm representing the plaintiff. I, too, would like to start with what we've called the jurisdictional issue, and I want to make two matters clear at the outset in doing so. The first is that the plaintiff does not challenge the amount of this assessment in any way, shape, or form. We don't challenge the valuation, the methodology, the comparables, or any other alleged irregularities. Our only contention is that the assessor had no authority to tax this permit because it's a non-taxable license. And so our only challenge we bring to the Court in today is based on the unauthorized by law doctrine. The second point that I'd like to make is that the issue here is not whether the unauthorized by law exception remains in existence or whether it applies to real property taxes. It is, it does, and the defendant's reply and opening briefs have conceded that. Instead, Your Honors, the issue that's tendered by the defendants is whether our challenge comes within that admitted unauthorized by law exception. And it surely does. Defendants have two arguments to the contrary, and they both fail. The first argument, you heard it again this morning, is that the exception allegedly is very limited to only two things. First, if the tax is generally invalid as to all taxpayers. Second, if the official issuing the assessment was not the proper official. It's not that simple, and it's not that limited. And this Court has put that argument to rest. This Court, as early as 1859 in the Chicago Burlington case, said that even where the tax is completely valid as a general matter, if it is assessed upon property that is not subject to the tax, it's unauthorized. And we heard an argument that Santiago in 1990 changed this. Well, let's look at that. Because this Court repeated all through the history of this. Starting in 1943, the same doctrine was repeated in Owens, stated slightly differently. If the official determines a matter is taxable when it is not, it's unauthorized. The 1995 appellate case of Communications Cable stated it this way. If the assessor lacked authority or discretion to impose the tax as applied to the particular taxpayers, not generally, it's unauthorized. And almost every single reported case. Any import to the fact that Article 9 of the Constitution of 1848 is structured differently than Article 9 of the 1970 Constitution, in that the 1848 Constitution does not have the exclusive power language of the Constitution of 70? Your Honor, I don't think so. And with all respect, I believe defendants' raising of the Constitution is a complete strawman red herring. The constitutional provision that's relied upon is the one that naturally says taxing is a legislative power. The power to tax. Nobody else can tax. We're not asking a court to tax. We're asking this Court to do what it's done, not only in 1859, but I'm going to tell the Court that, and I'll cite this Court's 1978 landfill decision, its 1979 Board of Governors decision, its 1999 Knox decision, and its 2003 Hawthorne decision. In every one of those cases, notwithstanding that the challenged action was completely valid generally and done by the right person, the unauthorized by law doctrine was applied. And it's been applied in tax cases. And the reason that the Court does not overstep its bounds is because we're just asking the Court to do what courts do. Courts review what other branches of the government does. That's part of the separation of powers. That's one of the values of an independent judiciary. And the fact that you can't. How do you refute Justice Wilson's comment in the dissent that the existence of a complete remedy for taxation issues in Section 23-15B of the property tax code is essentially overwritten by the appellate majority in this case? The complete remedy language, Your Honor, I suggest is limited to those cases that are properly under Article 23. In other words, the mistakes that we've heard about, amounts of the assessment, perhaps notice provisions and the like, if they are able to be covered by Article 23, then there's a complete remedy provided in the statute. We wouldn't disagree with that. We would not be here if we were challenging the amount of the assessment. But when Article 23 was amended in 1995, the legislature under the rulings of this Court is deemed to have known the common law and deemed to have blessed it if it doesn't change it in the act. And the legislature did not abrogate the common law doctrine of unauthorized by law. You'll remember, though, it abrogated and outlawed the constructive fraud common law principle, indicating it was aware of the common law, it knew how to abrogate it when it enacted that statute, and it left the unauthorized by law doctrine untouched. Is it a fair statement that unlike opposing counsel in his position in this case, we would have to agree with the appellate court on the second issue for you to prevail? Because the whole lease license argument, if we disagree with the appellate court, then it wouldn't be unauthorized by law, right? That's correct. For us to get complete victory here, you would have to agree with us on both issues. But the jurisdictional issue is separate from the outcome on the merits issue. Yeah, no question. And the reason that, with all respect, counsel is just plain wrong when he argues that the assessor had the right to be wrong, just as a general matter, court always has jurisdiction to consider its jurisdiction. So you can get into the merits issue as you're deciding the jurisdiction issue. But more importantly than that, this court in 1999, in that Knox case, was presented with that identical argument. It wasn't made by a lawyer. It was made by the dissenting appellate justice. And he made the identical argument, and he said, you know what? They had the right to be wrong as to whether that was agricultural or non-agricultural property. They had the authority to do it because they had the authority to zone non-agricultural property. So they had to find out, was that property non-agricultural? Same argument you're hearing today. This court, in two words, answered the question. What your Honor said was, we disagree. You have rejected that argument. Justice Burke's question I don't think was fully answered, or at least not correctly answered. This case is on all fours with Knox because just like in Knox where the zoning authority had to decide, was it agricultural or not? This assessor had to decide in the first instance, was it a lease or was it a license? That's the same issue. And the only argument we hear against Knox, there's only one argument, is that the enabling statute in Knox expressly forbade the zoning of agricultural property. But that confuses the issue. The agency has to get a grant of authority. That authority must come, the source must be within the statute. It doesn't have to be what isn't negated. The authority of the agency is only what's given. And it's expressly, it's especially applicable in the tax field. And the Santiago case that counsel mentioned says that. There's no implied authority to tax. Where did Justice Wilson go wrong when he distinguished Knox on the basis that the assessor's power over the premises and subject matter were not at issue? That the assessor's power here? I think he said, unlike Knox, the assessor's power over the premises and subject matter were not at issue. Well, and I think this goes to Justice Kilbride's question as well. The assessor doesn't have unbridled power to assess all real property. The very enabling act that counsel mentioned has an exception. The assessor is not allowed to tax exempt property. Just like Knox is not allowed to zone agricultural property. There's only one exception to where exempt property can be taxed. And that's when it is leased to a private, non-exempt third party. But the prohibition against this property is exempt property. The only exception, the only time that the assessor could tax that property is if the park district leased it to a third party. That didn't happen here. It licensed it. And the outcome doesn't govern the jurisdiction. The nature of the challenge does. We challenged this saying this is a license. The defendants in their opening briefing, page 20, concede that a license, if it's truly a license, it's personal property, not real property, and it's not taxable. So it's the challenge that raises the jurisdiction of the court, not the outcome. If this were a challenge that the agency action was unconstitutional on its face, there would be no doubt that the court would have jurisdiction. But if you were to hold in that case that it was constitutional, that wouldn't deprive you of jurisdiction. The outcome doesn't change it. Your decision that the action was constitutional would be binding forever. So that distinction that the Enabling Act doesn't prohibit is just wrong because the Enabling Act does prohibit it, and it's the grant of authority that really matters. And I would suggest in response to Justice Burke, if you substitute the agricultural and non-agricultural property for our lease versus license, this is not. It's the same case. The court has already decided it. Now, there are a couple other arguments that have been made. One is that there are privileges in the definition of real property. The word privileges appears. And therefore, we hear the argument in the brief that the assessor had the authority to tax licenses directly. Well, that's not what the – first of all, that argument was waived. It was made for the first time in reply. But it's dead wrong. The reference to privileges isn't to a separate category of taxable property. It's to the fact that when the assessor is assessing the amount of the value of the property in the hands of the owner, one of the components that goes into it is the value of the license or the privilege. But that doesn't mean you can tax the licensee. Real estate taxes are only permitted against owners. One exception, again, a lease by a non-exempt entity, but not a license. Maybe a hypothetical makes the point. Let's say a non-exempt owner leases the property to Wal-Mart to build and operate a store. Well, either lease or license, either way it's a privilege. That doesn't mean that Wal-Mart gets taxed. The owner gets taxed, and then built into the owner's value is the value of the privilege, the lease or the license, with Wal-Mart. The final argument that we hear is that an affirmance by this court will open the floodgates to litigation that today is not permitted. Well, that's simply not true, Your Honors. First of all, I can't give you an exact number, but I'm going to suggest that I think we all have experience. 99% of challenges to assessments are the amount of the assessment. This decision today will have no effect on that. Those will go through the administrative channels like always. As to whether the floodgates are open to unauthorized by law exceptions, that exception exists right now. You're not opening any floodgates to anything. And in any event, over the years of the reported jurisprudence, there's been very few unauthorized by law challenges. And in the end, it's appropriate to have the unauthorized by law exception. Again, this court sits to determine whether an administrative official has acted within his or her lawful authority. That's your function. And your function is to stop them when they're not. Here, the assessor admits that the only reason he even issued an assessment was because he was embarrassed by a newspaper article. And in his words, out of his own document, he would rather have a tax bill that is canceled than for the restaurant to go another year without a bill. Surely, this court has jurisdiction to decide whether that assessment was lawful and legally authorized. And to use the assessor's own words, to determine whether that bill ought to be canceled, just as the trial court did and just as the appellate court did. If there are no further questions on jurisdiction, and I'm happy to answer any more than there are, I'm going to turn to the merits. Mr. Novak, I do. I think people agree that this is exempt property. Presumably, there was an exemption applied for and granted by the entity to take it out. So, the question is this. Does the Board of Review not have within its statutory authority to determine challenges on exemptions in the first instance? I know it's not an exemption challenge, but I want to start with that basis. Yes. The Board of Review can do three things. It can review challenges on over-assessment, under-assessment, and exemption. All right. Now, a lease would negate an exemption, correct? No, the lease would not create the exemption. No, no, not create it, negate it. It would not negate the exemption. Your Honor, what happens is the exemption stays in place, but the property is deemed to be owned by the non-exempt lessee. As a matter of fact, and there's a first district case authored by Justice then, Appellate Justice Burke, called Water Reclamation, where she pointed out, correctly because the statute says it, in order for the 195, which is the statute under which the tax was issued, to apply, the property must be exempt before the lease and must be exempt after the lease. If the lease were to a private party that did manufacturing or something that was non-public, the exemption would disappear, and you know who would be taxed? Not the lessee, the Chicago Park District, because the property is no longer exempt. So the property must remain exempt at all times for 195 to apply, and it's only if there's a lease that the tax then shifts to the lessee. But in the license, as the defendants admit, there's no authority to tax the license. Bottom line, Your Honor, I mean, all the arguments back and forth, but if a tax is issued on something that's not taxable, how in the world can that be authorized? You're not legally authorized to tax something that's not authorized or not taxable. That just can't be. And to call that just a mistake or that's something they've got to make a decision on doesn't change the fact. At the end of the day, our challenge is, and if Your Honor's affirm, it'll be found to be, in four judges, the only four, every judge that has considered this case, including Justice Wilson, who dissented only on jurisdiction, said that this is a license. So how can an assessor assess a non-taxable personal property? In the reply brief, they went so far as to say if a real property tax was issued on a motorcycle, the assessor would have authority to do that. I think that says it all. And I will turn to the merits if there are no more questions on jurisdiction. I don't have much time. I'm going to have to speed walk through this. Let me just summarize it as follows. Every indicia of whether this is a lease or a license comes out strongly, strongly in favor of a license. Facts and circumstances are to be taken into account. The Park District never leases. That's their policy. This wasn't a sweetheart deal for this particular licensee. That's applied to every concessionaire at Millennium Park, every concessionaire in the Chicago Park District. The language of this document is all license. There's nothing in there. Not a word about lease, no tenant, no landlord, holdover, any of those words. The two most important legal effect factors are control and possession. There's 34 pages of controls here. Eleven separate mandatory items going to such things as uniforms and tipping. Requirement to get the consent of the Park District, 16 other things including what goes on the menu, what merchandise can be sold and at what price. On possession, first of all, there's two prongs of this property. There's what's called the concession area. Defendants conceded in the appellate court. There's no lease on the concession area. That's the biggest part of this property. And there's no exclusive possession on the remaining part of the property because the plaintiff shares it all year round with at least three other vendors, three other concessionaires. And part of it, you can't even get on part of the property. Both control and possession support mandate, I would suggest, the license. The two cases, the only two cases cited against that, Board of Authority, Airport Authority and Stevens are completely distinguishable. In Board of Authority, the court went out of its way to say that other than making sure that it's operated as a car rental facility, no other controls whatsoever by the landlord. Stevens, the McDonald's case, with all respect to my brother counsel, whether McDonald's is a franchise or puts controls on its franchisee is irrelevant to the question of whether the landlord has. McDonald's franchise or could change those controls during the term of that lease and that landlord would have nothing to say about it. But in our case, the Park District has everything, everything to say about our control, possession. Your Honors, my time, my red light is on. If there are no further questions, I'll sit down by just asking Your Honors respectfully to affirm the decisions below. Thank you very much. Thank you. May I inquire, Chief Justice, do I have additional time or have I used it all? Yes, you do. Ten minutes. My responses are fairly to the point. The word authorized is being used in two different senses here. Counsel says that tax is not authorized. Maybe it is, maybe it isn't. But is the assessment authorized? Yes, it is. It's authorized by statute. The next case has been decided under a completely different statutory framework. Let's just look at the logic of counsel's argument. He says that the court finds, and this applies to the circuit court, but I assume every court, the court finds that this is a license, it has jurisdiction. The court finds it is a lease, it loses jurisdiction. In fact, it can't even determine that it's a lease because it doesn't have jurisdiction. That doesn't make any sense. The court's jurisdiction is determined before the case gets there. And the right or the authority to assess is determined by statute. Thank you very much. I'd be certainly open to questions. Thank you, counsel. Case number 108-923 is taken under advisory.